RING ET AL., APPELLANTS, *v*. FOX ET AL., APPELLEES.

(No. 5377—Decided June 28, 1977.)

*Mr. Patrick F. Timmins, Jr.,* for appellants.
*Mr. Peter J. Rakay,* for appellee Fox.
*Mr. William D. Forbes,* for all other appellees.

SHERER, P. J. These appeals are from a summary judgment of the Common Pleas Court dismissing appeals

from a decision of the Miamisburg Civil Service Commission overruling appellants' motion for summary judgment and in sustaining the motion of appellee Leonard Fox for summary judgment.

Civil R. 56, relating to summary judgment, provides, in part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

In sustaining the motion of appellee Fox for summary judgment, the Court found that there was no genuine issue of material fact and that appellees were entitled to judgment as a matter of law. Specifically the judgment of the trial court made the following findings and conclusions:

Findings of Fact:

"The Court finds there is no genuine issue in the material facts pertinent hereto:

"(1) That the Commission gave notice of and conducted a promotional examination for captain in the city fire department.

"(2) That the Appellants Ring and Lutz and Appellee Fox were certified as an eligible list in that order on October 31, 1974.

"(3) That Appellee Fox was appointed to the rank of captain by the City Manager on November 18, 1974.

"(4) Subsequently, Appellee Fox served his proba-

tionary period and was permanently appointed.

"(5) Appellants filed a Notice of Appeal of the certification and/or the appointment of Fox with the Civil Service Commission.

"(6) On December 31, 1975, the Commission dismissed the appeal."

Conclusions of Law

"The Court concludes as matters of law:

"(1) That, except for a conflict arising by virtue of Section 10 of Article XV, local charter provisions relating to civil service take precedence over general statutes. (Canada v. Phillips, 168 OS 191).

"(2) That the civil service proceedings resulting in the appointment of Fox were consistent with the Charter provisions, rules and regulations of the City of Miamisburg.

"(3) That the appointment of Fox having been made permanent, the Appellants are not entitled to relief sought under this action. (State ex rel Polen v. Wymer, 36 OS 2d 24; Mikus v. Hirbe, 7 OS 2d 104)."

The evidence shows that the city of Miamisburg, through its Civil Service Commission, posted a notice in its firehouses of a promotional examination to be given to fill the position of Captain in its fire department.

Rule VIII, Section 3, of the Commission's Rules and Regulations provides:

"Announcement of Promotional Examination: Whenever the Commission orders a promotional examination to be held, notice of such examination shall be published by the Commission and posted in the department or departments in which eligibles are employed. It shall be the duty of the head of each department where eligibles are employed to see that each eligible is notified of the examination or has access to such notice."

Miamisburg is a charter city and Section 7.07 of its charter, relating to the powers and duties of its Civil Service Commission provides:

"The provisions of the laws of the State of Ohio regarding selection, promotion, demotion, discipline, and re-

moval of employees within the classified service of the Municipality as provided by Section 7.06 of this Charter, shall be applicable under this Charter unless such provisions conflict with the provisions of this Charter; and provided that the Civil Service Commission shall have the power to adopt rules and regulations concerning the selection, promotion, demotion, discipline, and removal of employees within the classified service of the Municipality, which rules and regulations may modify, supplement, or supersede the laws of the state of Ohio, and in case of conflict shall prevail over the laws of the state of Ohio.''

Rule VIII, Section 5, of the Civil Service Commission, relating to the character of promotion examinations, provides:

''Character of Promotional Examinations: All promotional examinations shall be practical in character and shall relate directly to those matters which will fairly test the relative capacity of the person examined to discharge the particular duties of the class of positions to which promotion is sought. Each promotional examination shall consist of one or more of the following parts:

''a. Performance Ratings. This subject shall consist of the last performance rating of the employee concerned.

''b. Written Test. This part when required shall include a written demonstration designed to show the familiarity of competitors with the knowledge involved in the class of positions to which they seek appointments, their ability in the use of English, the range of their general information, or their general educational attainments.

''c. Mental Tests. This part when required shall include any tests to determine intelligence, the general capacity of applicants to adjust their thinking to new problems and conditions of life, or to ascertain special character traits and aptitudes.

''d. Practical Performance Test. This part when required shall include such tests of performance or trade as will determine the ability and manual skill of competitors to perform the work involved.

''e. Oral Interview. This part when required shall in-

clude a personal interview in which ability to deal with others, to meet the public, to supervise other employees, or other personal qualifications shall be determined. An oral interview may also be used in examinations where a written test is unnecessary or impracticable.

"f. Seniority. This part shall consist of a credit awarded to each competitor on the basis of his continuous service in the classified service of the City of Miamisburg.

"Whenever a position requires two or more distinct skills or bodies of knowledge, the Commission may devise a separate test on each such separate skill or body of knowledge and determine a minimum grade for each part of the examination. Any candidate who fails to attain at least this minimum grade shall be considered to have failed the examination and shall not be examined on any other parts if they are planned."

The first error assigned is that the Miamisburg Civil Service Commission and the Montgomery County Common Pleas Court committed prejudicial error in not ruling that the source material provisions mandated in the last paragraph of R. C. 124.45 were applicable to the fire captain's promotional examination in the instant case and, therefore, the Miamisburg Civil Service Commission's October 31, 1975, certified eligibility list was void as a matter of law.

The last paragraph of R. C. 124.45 provides:

"The public notice of a holding of a promotional examination for a position or positions in a fire department shall, unless waived by all persons eligible to participate, be published not less than thirty days prior to the examination and shall contain a description of the source material from which the examination questions are prepared. Such source material shall be readily accessible to the examinee. Failure to comply with this requirement shall make void the pursuant examination. This paragraph does not prohibit the use of questions having answers based on experience in the fire service within the fire department in which the promotional examination is being given."

In support of their argument, appellants cite *State, ex rel. Alden E. Stilson & Associates,* v. *Ferguson* (1950), 154 Ohio St. 139, and *Eggers* v. *Morr* (1955), 162 Ohio St. 521. These cases do not answer the question posed by appellants' first assignment of error.

The appellees cite *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191, to support their argument.

In *Canada,* relator sought a writ of mandamus to compel the director of public safety of the city of Columbus to revoke the appointment of Captain List to the position of deputy inspector of police and to appoint relator to that position.

Both List and relator had taken a competitive examination for the position. Relator received the highest grade and List the second highest grade in the examination. The question presented was whether the statute, R. C. 143.34, requiring the appointment of the one receiving the highest grade, prevailed over a Charter provision authorizing the appointment of one of the three standing highest on the examination.

The Court's holding in the first four paragraphs of the syllabus is as follows:

"1. The appointment of officers in the police force of a city represents the exercise of a power of local self-government within the meaning of those words as used in Sections 3 and 7 of Article XVIII of the Ohio Constitution.

"2. Provisions of a city charter, for appointment to a position in the competitive classified service of the city from among the three candidates highest on the eligible list, authorize appointment as a deputy inspector of police of the candidate second highest on such list, notwithstanding that a state statute (Section 143.34, Revised Code) requires, with respect to a vacancy in a position above the rank of patrolman in a police department that the candidate highest on the eligible list be appointed.

"3. The authorty of the General Assembly, to enact laws applicable to cities pursuant to Section 10 of Article XV of the Constitution, is an authority to enact such laws to be applicable in cities only where and to the ex-

tent that such laws will not restrict the exercise by such cities of their powers of local self-government.

"4. The words, 'as are not in conflict with general laws' found in Section 3 of Article XVIII of the Constitution, modify the words 'local police, sanitary and other similar regulations' but do not modify the words 'powers of local self-government.' "

At page 195, the Court stated:

"[We are required to] consider the authority of the General Assembly, to enact laws applicable to cities pursuant to Section 10 of Article XV of the Ohio Constitution, to be an authority to enact such laws to be applicable in cities only where and to the extent that such laws will not restrict the exercise by such cities of their powers of local self-government. Thus, such laws may be applicable, for example, where a city has failed to enact charter or legislative provisions on the subject covered by the statutes and the statutes do not conflict with any charter or municipal legislative provisions or where a city has in its charter expressly adopted the state statutes."

The question posed is whether R. C. 124.45 conflicts with any provisions of the Miamisburg Charter or with the city's legislative provisions with respect to notice of promotional examinations. The Rules and Regulations of the Civil Service Commission authorized by the Charter provide that notice of the giving of a promotional examination shall be given all eligibles by posting a notice thereof in every firehouse. No Charter provision, no ordinance of the city and no rule or regulation of the Civil Service Commission addresses itself to the contents of the notice or to the time of giving notice with respect to the date of the examination as does R. C. 124.45.

The city of Miamisburg in the exercise of its powers of local self-government granted it by Sections 3 and 7 of Article XVIII of the Ohio Constitution has adopted a Charter wherein it created a Civil Service Commission and authorized it to adopt rules and regulations respecting notice of the holding of promotional examinations different than provided in R. C. 124.45.

We conclude that Rule VIII, Section 3, of the Rules

and Regulations of the Civil Service Commission is not in conflict with the provisions of R. C. 124.45 because such rule does not address itself to the subject of the contents of such notice and Section 7.07 of Miamisburg's Charter adopts the state laws with respect to the contents of the notice. The rule does not provide for any lapse of time between the notice and the examination. Twenty-one days elapsed between the notice and the examination, not thirty days as provided by statute.

We conclude that the Common Pleas Court erred to the prejudice of appellant in failing to hold that the provisions of R. C. 124.45 were applicable to the facts in this case and in concluding that the proceedings of the Civil Service Commission were consistent with the provisions of the Miamisburg Charter and the rules and regulations of the city of Miamisburg.

The second error assigned is that the Miamisburg Civil Service Commission and the Common Pleas Court erred to the prejudice of appellants in not ruling that the Miamisburg Civil Service Commission failed to follow its own Rule VIII, Section 5, when administering the Captains' promotional examination in the instant case; therefore, appellee Fox was not eligible to proceed with further parts of said promotional test since he failed the written part of the promotional examination with a score of 58 percent.

The minutes of the meeting of the Civil Service Commission held prior to the examination in question show that the Commission, on July 20, 1974, instructed its Secretary to inform the Chief of the Fire Department that the Fire Captain's test was to be given as in the past until a consultant study reviewing testing and selection procedures is completed.

The records of the Commission in evidence show that in the past only a written examination had been given and that a passing grade of 70 percent was required.

However, the Secretary posted a notice of the upcoming examination on October 3, 1974 as follows:

"Civil Service Commission will be giving a written

examination for the open Captain's position Thursday, October 24 from 7:00 P. M. to 9:45 P. M. in the Police Briefing Room. This written examination and an interview of each applicant will count equally in determining the top three applicants. Those top applicants will then be required to take a psychological test and a final interview with the Chief and existing officers."

These tests were authorized by Rule VIII, Sections 5(b), 5(c) and 5(e) of the Civil Service Commission.

Section 5(b) relates to a written test which provides for "a written demonstration designed to show the familiarity of competitors with the knowledge involved in the class of positions to which they seek appointments, their ability in the use of English, the range of their general information, or their general educational attainments."

Section 5(c) relates to mental tests and "include[s] any tests to determine intelligence, the general capacity of applicants to adjust their thinking to new problems and conditions of life, or to ascertain special character traits and aptitudes."

Section 5(e) relates to oral interviews and when required "shall include a personal interview in which ability to deal with others, to meet the public, to supervise other employees, or other personal qualifications shall be determined."

We have noted that Rule VIII provides that when a position requires two or more distinct skills or bodies of knowledge, the Commission may devise a separate test on each separate skill or body of knowledge and determine a minimum grade for each part of the examination. Any candidate who fails to attain at least this minimum grade shall be considered to have failed the examination and shall not be examined on any other parts if they are planned.

We have noted that the notice of the examination provided that the written examination and an interview of each applicant will count equally "in determining the top three applicants." The evidence relating to the actions of the Commission does not show that the Commission es-

tablished a minimum passing grade for the oral interview or the psychological test. Yet, there remains the action of the Commission on July 20, 1974, instructing its Secretary that the Fire Captain's test was to be given as in the past and the evidence that a passing grade of 70 percent was previously required on a written examination.

We conclude that the skills tested in the written tests, the oral interviews and in the psychological tests are separate and distinct skills within the meaning of Rule VIII of the Rules and of the Regulations of the Civil Service Commission.

The applicants were scored as follows:

|  | Written | Oral | Combined |
| --- | --- | --- | --- |
| Billy Ring (appellant) | 81 | 95 | 88 |
| Dennis Lutz (appellant) | 72 | 89 | 81 |
| Leonard Fox | 58 | 89 | 74 |

The scores indicate that equal weight was given by the scorer to the written tests and the oral tests and that the results of the psychological tests given the applicants were ignored, although they were to be included in the examination as provided in the notice of examination.

It appears either that the secretary failed to abide by the Commission's instructions to conduct the examination as in the past (by written test) or that the Commission in some manner, not reflected in the record of its proceedings, authorized or approved the giving of written tests, oral tests and psychological tests, but proceeded to adopt the Secretary's act of scoring only the written and oral tests to the exclusion of the results of the psychological tests.

The results of the psychological tests given to appellants Ring and Lutz were admitted in evidence as Exhibits 14 and 15 in the Common Pleas Court. A Report on Ring's test concluded as follows:

"* * * We are, in general, impressed with Mr. Ring's profile and feel confident that we could recommend him without reservation for the post of fire captain in your department. He appears to be the strongest of the three candidates tested at this time for the position in question. * * *"

After the tests were scored the names of the three applicants receiving the highest scores were certified for appointment and appellee Fox was appointed to the position as Captain of the fire department on November 19, 1974.

Because appellee Fox did not receive a passing grade on the written portion of the examination, we conclude that he was not eligible to take the subsequent oral and psychological tests.

The second assignment of error is limited to the contention that it was error on the part of the Civil Service Commission to permit Fox to take tests subsequent to the written examination because he did not pass the written test. We conclude that upon the facts shown, Fox was not eligible to proceed further in the examination and that the Common Pleas Court erred to the prejudice of appellant in failing to so hold. The examination was void. See *State, ex rel. Shoeman,* v. *Deuber* (1963), 175 Ohio St. 357.

The third error assigned is that the Common Pleas Court erred to the prejudice of appellants in dismissing their appeal filed pursuant to R. C. Chapter 2506 by stating that appellants were not entitled to the relief sought in the instant action based on the reported decisions in *State, ex rel Polen,* v. *Wymer* (1973), 36 Ohio St. 2d 24 and *State, ex rel Mikus,* v. *Hirbe* (1966), 7 Ohio St. 2d 104.

The *Polen* case was an action in *quo warranto* claiming a right to the position of Assistant Chief in the fire department of the city of Findlay. The Civil Service Commission mistakenly gave Wymer the highest grade and certified respondent Wymer as the one which received the highest grade and he was appointed. Before such certification, Polen appealed pursuant to R. C. 143.341* to the Civil Service Commission complaining of the improper grading. The appointing authority took no action to correct the mistake.

Subsequently, relator appealed to the Common Pleas Court. While relator's appeals were pending, respondent satisfactorily served his probationary period and his ap-

*R. C. 143.06 to 143.61 were amended and renumbered as part of R. C. Chapter 124, effective December 4, 1973.

pointment became permanent subject only to removal for cause pursuant to R. C. 143.27.

The Supreme Court held that relator was not entitled to the relief sought because he did not seek appropriate action to prevent respondent from further securing his claim to the office by such means as enjoining the certification and the appointment or obtaining a stay of the proceedings pending the outcome of the appeals.

None of the cases cited by appellee or cited and discussed therein involves a void examination. The case of *State, ex rel. Shoeman, supra,* involved a claim that a civil service examination was null and void because all the published source material was not readily available. Reliance was upon R. C. 143.341, which provided, in part:

"The public notice of a holding of a promotional examination for a position or positions in a fire department * * * shall contain a description of the source material from which the examination questions are prepared. Such source material shall be readily accessible to the examinee. Failure to comply with this requirement shall make void the pursuant examination."

At page 359, the Court stated:

"Section 143.341 reads in part:

" 'Vacancies in positions above the rank of regular fireman in a fire department shall be filled by competitive promotional examinations.' "

"If the examination was void, then there has been no compliance with this duty to fill the two vacancies for the rank of captain 'by competitive promotional examinations.' "

This third assignment of error is well taken. The Common Pleas Court erred to the prejudice of appellants in dismissing their appeals in reliance upon the *Polen* case.

The fourth assignment of error is that the Montgomery County Common Pleas Court committed error prejudicial to the appellants in sustaining the objection of the Commission and appellee Fox to the appellants' review, introduction and offer for admission into evidence of the

subpoenaed written report of appellee Fox which report was prepared by John E. Riley, Ph. D., as director of psychological services for the University of Dayton Guidance Center and submitted in November, 1974, to the city of Miamisburg in connection with its published announcement that the report would be part of the consideration by the appointing authority for arriving at the promotion to the fire captain's position in question.

We have noted that Rule VIII, Section 5(c), of the Civil Service Commission states that "mental tests" may be included in a promotional examination.

The posted notice of the Captain's examination by the Civil Service Commission reads as follows:

"October 3, 1974

"Civil Service Commission will be giving a written examination for the open Captain's position Thursday, October 24, from 7:00 P. M. to 9:45 P. M. in the Police Briefing Room. This written examination and an interview of each applicant will count equally in determining the top three applicants. Those top applicants will then be required to take a psychological test and a final interview with the Chief and existing officers."

From this notice it must be concluded that the certification of the three persons receiving the highest grades based on written and oral examinations and on psychological tests was to be made to the appointing authority.

The result of the psychological test given appellee Fox was pertinent to the appeal in the Common Pleas Court. The psychologist's report was not a privileged communication between between Fox and the examiner. Fox did not consult with the examiner for the purpose of diagnosis and treatment but was required by the Civil Service Commission to take such test.

McCormick on Evidence (2 ed. 1972) notes at page 214:

"Usually, however, when the doctor is employed by one other than the patient, treatment will not be the purpose and the privilege will not attach."

See also *Suetta* v. *Carnegie-Illinois Steel Corp.* (1955),

75 Ohio Law Abs. 487. Further, the Report is in the nature of a public record, having been required by a public body, and, as such, must be available for public inspection. *Dayton Newspapers v. Dayton* (1976), 45 Ohio St. 2d 107.

We conclude that the trial court erred in refusing to admit the result of the psychological test given appellee Fox.

The fifth assignment of error is that the trial court erred in concluding as a matter of law that the promotional selection of Fox did not violate Section 10, Article XV, of the Ohio Constitution which mandates selections under a civil service system based upon merit and fitness.

This assignment of error is well taken.

Section 10, Article XV, provides:

"Appointments and promotions in the civil service of the state, the several counties and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

Since we have held that the examination given was void, we conclude that the appointment of appellee Fox violated Section 10, Article XV, of the Ohio Constitution, the Charter of the city of Miamisburg and the Rules and Regulations of its Civil Service Commission.

We conclude that the trial court erred to the prejudice of appellants in holding that Fox was properly certified by the Miamisburg Civil Service Commission to the city manager for appointment, in holding that the appointment of Fox was consistent with the provisions of the Miamisburg Charter and with the Rules and Regulations of the Civil Service Commission and in concluding that the holding of the Supreme Court in *Polen* required a dismissal of the appeals.

The trial court erred to the prejudice of appellants in concluding that there were no genuine issues of fact remaining. There were genuine issues of fact undetermined in that there was an issue of fact as to whether the Civil Service Commission ordered only a written examination or whether it ordered the oral and psychological tests giv-

en and, if so, whether it made any orders as to the scoring of same.

The trial Court erred to the prejudice of appellants in concluding that appellees were entitled to judgment as a matter of law.

The judgment of the Common Pleas Court will be reversed and the cause will be remanded to that Court for further proceedings according to law.

The trial court, upon remand, should give consideration to the question as to what record of the oral examination is available for review.

*Judgment reversed and cause remanded.*

McBRIDE and RUTHERFORD, JJ., concur.

RUTHERFORD, J., of the Fifth Appellate District, sitting by designation in the Second Appellate District.